THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| NEXT LEVEL VENTURES, LLC, | CASE NO. C22-1083-JCC |
| Petitioner, | ORDER |
| v. | |
| AVID HOLDINGS LTD. F/K/A ALDEREGO GROUP LTD. and DOES I-XX, | |
| Respondents. | |

This matter comes before the Court on Next Level Ventures, LLC's ("Next Level") petition to confirm an arbitration award and enter judgment (Dkt. No. 1), Avid Holdings LTD's ("Avid") amended motion to vacate the arbitration award (Dkt. No. 21), Next Level's cross-motion to confirm the award (Dkt. No. 29), and Avid's motion to seal (Dkt. No. 20). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary[1] and hereby DENIES Avid's amended motion to vacate the award (Dkt. No. 21), GRANTS Next Level's motion to confirm the award (Dkt. No. 29), and DENIES Avid's motion

---

[1] Such motions can be decided "solely on the papers submitted by the parties in support of their motions." *Productos Mercantiles E Industriales, S.A. v. Faberge USA*, *Inc.*, 23 F.3d 41, 46 (2d Cir. 1994) (citing Fed. R. Civ. P. 43; *Legion Ins. Co. v. Ins. Gen. Agency, Inc.*, 822 F.2d 541, 543 (5th Cir. 1987)); *see also O.R. Securities, Inc. v. Prof. Plan. Associates, Inc.*, 857 F.2d 742, 747 (11th Cir. 1988) (citing *Moses H. Cone Mem'l. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983) (describing proceedings under the Federal Arbitration Act as "summary in nature.").

to seal (Dkt. No. 20) for the reasons explained herein.

## I.    BACKGROUND

Next Level sells vaping devices and accessories to end users, and Avid designs, develops, and produces such devices through relationships with third-party manufacturers. (*See generally* Dkt. Nos. 21, 29.) At some point, the two formalized an arrangement for Next Level to distribute Avid's branded vaping devices, last memorialized in an Amended and Restated Distribution Agreement ("Distribution Agreement").[2] (*See* Dkt. No. 11-2 at 24–36.) Next Level would be Avid's "exclusive distributor to resell [certain vaping products] . . . for the entire world." (*Id.* at 24.) In support, Avid granted Next Level an "exclusive" license for Avid's trademarks and agreed to indemnify Next Level for any costs resulting from Avid's infringement of third-party intellectual property. (*Id.* at 27, 31.) In exchange, Next Level committed to purchase escalating amounts of vaping devices and accessories from Avid. (*Id.* at 34.)

According to the arbitration award, which is at issue in this matter, the parties operated under this arrangement for some time, with modifications, without issue. (Dkt. No. 2-1 at 12–13.) But Next Level contends that, in mid-2021, this arrangement broke down. Avid failed to supply Next Level with the minimum agreed-upon amounts of product and, as a result, Next Level felt it necessary to secure similar vaping devices and accessories from other sources. (*Id.* at 19–20.) Avid counters that it stopped shipping product only because Next Level's stopped making payment to Avid and, in fact, was badly in arrears. (*See* Dkt. No. 21 at 3 (citing Dkt. No. 11 at 2–3).) As such, Avid could no longer fund the production of additional vaping devices for delivery to Next Level. (*Id.*)[3] On September 2, 2021, Next Level notified Avid that it considered

---

[2] Jonathan Carfield, Avid's Chairman, signed on the company's behalf. (Dkt. No. 2-2 at 11.) At the time, the entity's name was Alder Ego Group Ltd. (*Id.*) It later changed its name to Avid Holdings LTD. (*See* Dkt. No. 11-2 at 3.)

[3] Avid further contends that this was part of a coordinated effort by Next Level to cut Avid out of the very supply chain it developed. (*See* Dkt. No. 21 at 3 (citing Dkt. No. 11 at 2–3).) But Avid presents the Court with no evidence supporting this contention, nor did it elect to do so in the arbitration proceeding. (*See generally* Dkt. Nos. 2-1, 21, 31.) Regardless, this has little bearing

1    Avid to be in breach of the Distribution Agreement. (Dkt. No. 30-3 at 2–4.)

2        Shortly thereafter, Next Level filed an arbitration demand[4] and statement of claims with

3    the International Center for Dispute Resolution ("ICDR"). (*See* Dkt. No. 2-1 at 4.) In keeping

4    with the American Arbitration Association's ("AAA") Commercial Arbitration Rules, the

5    arbitrator reviewed Next Level's evidentiary and legal submissions, took testimony from Next

6    Level's witnesses during a hearing, and made findings of fact and conclusions of law. (*Id.* at 4–

7    26.) Based on those findings and conclusions, the arbitrator awarded Next Level $892,020.25,

8    plus 12% interest per annum., (*id.* at 26), along with declaratory and injunctive relief regarding

9    Next Level and Avid's performance under the Distribution Agreement, (*id.* at 27–28). The

10   arbitrator also imposed a $39,975 obligation for the arbitrator's compensation and associated

11   fees and expenses for the proceeding. (*Id.* at 28.)

12       Other than counsel's appearance at a preliminary administrative conference call, (*see*

13   Dkt. No. 30-9 at 2–3), Avid did not participate in the arbitration proceeding. (Dkt. No. 2-1 at 6–

14   8.)[5] This is despite the arbitrator's finding that Avid had received "due notice" of the proceeding

15   pursuant to the AAA's Commercial Arbitration Rules. (*Id.*)

16       Next Level filed a petition with this Court to confirm the arbitration award and enter

17   judgment, which it served on Avid, along with summons for this action. (*See* Dkt. Nos. 1, 7.) In

18
     _____

19   on the outcome here, given the circumscribed nature of the issues before the Court. *See* 9 U.S.C.
     10.

20   [4] The Distribution Agreement called for "[a]ny controversy or claim arising out of or relating to
21   this contract, or the breach thereof" to be "settled by arbitration administered by the American
     Arbitration Association" with "judgment on the award rendered by the arbitrator(s) [] entered in
22   any court having jurisdiction thereof." (Dkt. No. 2-2 at 10.)

23   [5] Avid contends that it hired counsel, Preston Ricardo, to represent it at the proceeding but that
     Next Level conspired with Zhao Yu to end that relationship, and that this is the reason Avid did
24   not participate. (Dkt. No. 31 at 6.) But it presents the Court with no admissible evidence to
     support this contention, nor is it plausible, in light of (a) Mr. Ricardo's response to Zhao's
25   communication, (*see* Dkt. No. 11-2 at 2), and/or (b) the unrebutted evidence of Mr. Carfield's
     affirmative decision to *not* participate in the arbitration, discussed later in this Order, *see infra*
26   Part II.B.

response, Avid moved to vacate the award, (*see* Dkt. No. 10), before stipulating to a briefing schedule on cross-motions to vacate and confirm, which are presently before the Court. (*See* Dkt. No. 17.)

## II.   DISCUSSION

### A.   Legal Standard

Under the Federal Arbitration Act ("FAA"),[6] the Court must grant an order confirming an arbitration award "unless the award is vacated, modified, or corrected." 9 U.S.C. § 9. The Court's review of a petition to confirm is narrow. It is limited to correcting a technical error, striking portions of an award unrelated to the subject of the arbitration, or **vacating** an award when it "evidences affirmative misconduct in the arbitral process or the final result or that is completely irrational or exhibits a manifest disregard for the law." *Kyocera Corp. v. Prudential-Bache Trade Services, Inc.*, 341 F.3d 987, 997–98 (9th Cir. 2003).[7] In asking the Court for vacatur, Avid implicates two bases provided by the FAA: (1) "where the award was procured by corruption, fraud, or undue means" and (2) "where the arbitrators exceeded their powers." 9 U.S.C. § 10(a)(1), (4). (*See* Dkt. No. 21 at 9–10.)[8]

### B.   AVID's Motion to Vacate is Untimely

The ICDR sent notification to the parties of the arbitrator's final award on April 22, 2022.

---

[6] Avid makes various arguments for the application of state law to *this* proceeding—as opposed to the arbitration proceeding. (*See* Dkt. Nos. 21 at 11, 12; 31 at 10–14, 19, 20.) Each is based on the forum selection clause contained within the Distribution Agreement. (*See* Dkt. No. 2-2 at 10.) But that clause has no import on the Court's consideration of the procedural aspects of this proceeding, which is to confirm an arbitration award pursuant to the FAA. *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).

[7] "'Manifest disregard of the law' means something more than just an error in the law or a failure on the part of the arbitrators to understand or apply the law. It must be clear from the record that the arbitrators recognized the applicable law and then ignored it." *Mich. Mut. Ins. Co. v. Unigard Sec. Ins. Co.*, 44 F.3d 826, 832 (9th Cir. 1995) (citation omitted).

[8] On reply, Avid also contends, for the first time, that the doctrine of illegality applies. (Dkt. No. 33 at 18–19.) This is both procedurally improper, *see, e.g., State of Nev. v. Watkins*, 914 F.2d 1545, 1560 (9th Cir. 1990), and inapt. Nothing in the record indicates that the Distribution Agreement was for the distribution of illicit substances, just vaping devices and accessories. (*See*

(Dkt. No. 30-15.) The FAA mandates that a motion to vacate such an award be made "within three months after the award is filed or delivered." 9 U.S.C. § 12. Here, AVID served notice of its first motion to vacate (Dkt. No. 9) on December 7, 2022, which is more than seven months beyond the award date. Avid does not dispute that this is beyond the FAA's three-month statute of limitations, but it asserts the award was never delivered to it (thereby never triggering the limitations period), and even if it was, equitable tolling should apply. (Dkt. No. 31 at 16–17.)

### 1.  Delivery

The Distribution Agreement provides that "[a]ll notices, requests, consents, claims, demands, waivers and other communications under this Agreement must be in writing and addressed to . . . AlderEgo Group Ltd. Room 1206 12/F, Eastern 397 Hennessy Road, Wan Chai, Hong Kong." (Dkt. No. 2-2 at 9.) Avid does not contest Next Level's assertion that the final arbitration award was, in fact, delivered by Federal Express to this address. (*See generally* Dkt. No. 31 at 16–17, *see also* Dkt. No. 29 at 13 (citing Dkt. No. 30-15).) But Avid contends that Next Level conspired with Avid's local representative in Hong Kong, Zhao Yu, to withhold notice of the award from Avid and its chairman, Jonathan Carfield. (Dkt. No. 31 at 16.) However Avid provides no evidence supporting this assertion. (*See generally id.*) Moreover, its position is belied by the ICDR's communication, which indicates that it directed a copy of the final award to Mr. Carfield personally, in addition to Avid at the address indicated in the Distribution Agreement. (*See* Dkt. No. 30-15 at 2.)

### 2.  Equitable Tolling

Next, Avid suggests that, regardless of whether the award was delivered, equitable tolling should apply because it "diligently pursued its rights" and, once Mr. Carfield became aware of Zhao's collusion with Next Level, it "promptly moved to vacate" the arbitration award. (Dkt. No. 31 at 17–18.) But this is not consistent with the record before the Court. Moreover, "actual

---

*generally* Dkt. Nos. 2-1, 2-2.) Avid fails to explain how this activity is unlawful and might, therefore, trigger the doctrine. (*See generally* Dkt. No. 33 at 18–19.)

knowledge of the arbitration" precludes tolling of the deadline for moving to vacate an award. *See, e.g.*, *Int'l Relief and Dev., Inc. v. Ladu*, 474 Fed. App'x 165 (4th Cir. 2012); *Staples v. Morgan Stanley Smith Barney*, 2013 WL 5786593, slip op. at 5 (D. Mont. 2013). Next Level presents the Court with significant unrebutted evidence that Mr. Carfield was aware of the arbitration proceeding and simply chose not to participate.[9] Given this evidence, equitable tolling is inappropriate.

Accordingly, the Court FINDS that Avid's motion to vacate is untimely.

### C.   Avid Would Fare No Better on the Merits

Even if the Court were to consider Avid's motion on its merits, and it need not, the Court would still find in Next Level's favor. Again, Avid relies on two bases for vacatur under the FAA: Next Level committed fraud and/or the arbitrator exceeded their authority. (Dkt. No. 21 at 9.) Avid establishes neither.

#### 1.   Fraud

The FAA provides that an award may be vacated if "procured by corruption, fraud or undue means." 9 U.S.C. § 10(a)(1). Avid contends the allegedly underhanded scheme between Zhao and Next Level to (a) cut Avid out of its supply chain, (b) starve it of funds to battle the arbitration, and (c) divert notice of the arbitration was, indeed, an act of fraud. (*See* Dkt. No. 21 at 11–12.) But whether these allegations support Avid's contention that the award itself was "*procured*" by fraud is debatable. 9 U.S.C. § 10(a)(1). Regardless, for section 10(a)(1) to apply,

---

[9] This includes testimony in a deposition for a separate matter, where Mr. Carfield admits that he knew the arbitration was pending and that he received documents relating to the proceeding. (*See* Dkt. No. 30-6 at 5, 13–14.) In addition, Mr. Carfield told an associate, in November 29, 2021 by text or electronic chat, that "we didn't need to respond" and that "we didn't need to reply to" "the arbitration." (Dkt. No. 30-13 at 7.) Mr. Carfield later explained in a LinkedIn post the reasoning of his decision: He thought it would be a waste of money—if Avid paid to defend itself in an arbitration against Next Level, even if Avid prevailed, Next Level would "continue to us[e] [his trademark] without [his] permission." (Dkt. No. 30-14 at 2.) All Avid would accomplish would be to "force you into spending legal costs that are hard to enforce without dumping more money into lawyers. Therefore, [Avid] didn't even respond and [Next Level] won by default." (*Id.*)

Avid must first establish this fraud by "clear and convincing evidence." *Lafarge Conseils Et Etudes, S.A. v. Kaiser Cement & Gypsum Corp.*, 791 F.2d 1334, 1338 (9th Cir. 1986). And while Avid's accusations are certainly detailed and, if true, significant, **they are unsupported.** (*See generally* Dkt. Nos. 21, 31.)[10]

> For this reason, the Court FINDS Section 10(a)(1) inapplicable.

> 2. Exceeding Authority

> The FAA also provides that an award may be vacated if "the arbitrators exceeded their powers [such] . . . that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4). Avid contends that, by not providing Avid with adequate notice of the proceeding, the arbitrator did just that. (Dkt. No. 21 at 13.)

> Avid points out that the Distribution Agreement calls for all communications to be delivered to it at the Hennessy Road address in Hong Kong. (*Id.*) And it presents evidence that, in fact, this did not occur with respect to initial notice. (*See* Dkt. No. 21-2 at 2–3 (Federal Express notification that it was unable to deliver to this address on this occasion).) But, as described above, Next Level presents significant, unrebutted evidence that Avid was aware of the proceeding and chose not to participate. *See supra* Part II.B. It, therefore, waived any argument regarding inadequate notice. This is true under federal or even, as Avid argues, under state law. *See Carpenters 46 N. California Ctys. Conf. Bd. v. Zcon Builders*, 96 F.3d 410, 413 (9th Cir. 1996) (relevant standard is whether notice given is "so inadequate as to deny [participant] a fundamentally unfair hearing."); *21st Fin. Services, L.L.C. v. Manchester Fin. Bank*, 747 F.3d 331, 337 n.13 (5th Cir. 2014) (discussing general consensus amongst the Circuit Courts to "refuse[] to vacate arbitration award for defective notice where the party had actual notice."); *Westcott Homes LLC v. Chamness*, 192 P.3d 394, 398 (Wash. Ct. App. 2008) (actual notice is sufficient).

---

[10] Avid ostensibly admits as much by indicating that it will develop needed evidence through a separate arbitration proceeding. (Dkt. No. 21 at 12.)

1   For this reason, the Court FINDS Section 10(a)(4) inapplicable.

2   **D.   Avid's Motion to Seal**

3   Finally, Avid moves to seal an exhibit (Dkt. No. 22) to its amended motion to vacate.

4   (Dkt. No. 20). The exhibit contains Avid's Statement of Claim, which it recently filed for its own

5   arbitration proceeding, the Distribution Agreement, a trademark/service mark application

6   pending with the United States Patent and Trademark Office, and a receipt for a Federal Express

7   delivery failure. (Dkt. No. 22 at 2–71.) Avid explains the documents are deemed confidential

8   pursuant to Section 30 of the Distribution Agreement, which requires that "all documents and

9   judgments" relating to arbitration proceedings commenced in accordance with the agreement

10  "remain confidential." (Dkt. No. 20 at 2.)

11  "There is a strong presumption of public access to the court's files." LCR 5(g)(3). To

12  overcome it, a party must show "good cause" for sealing a document attached to a non-

13  dispositive motion and "compelling reasons" to seal a document attached to a dispositive motion.

14  *See Kamakana v. City and Cnty. of Honolulu*, 447 F.3d 1172, 1178–81 (9th Cir. 2006). The

15  Court views Avid's motion to vacate as dispositive and, thus, requires it to provide compelling

16  reasons to maintain its exhibit under seal. In general, it finds such reasons lacking in this

17  instance.[11] To the extent Avid believes portions of the statement of reasons, which is included in

18  the exhibit, contains information sufficiently proprietary to provide a compelling reason to shield

19  this information from the public's view, **it may file a redacted version of its exhibit**. Otherwise,

20  the Court will instruct the Clerk to unseal the entirety of the exhibit (Dkt. No. 22).

21  **III.   CONCLUSION**

22  For the foregoing reasons, Avid's amended motion to vacate the arbitration award (Dkt.

23  No. 21) is DENIED, Next Level's motion to confirm the award (Dkt. No. 29) is GRANTED, and

24
25
26

---

[11] The fact that the parties designated items relating to arbitration as confidential, for example, is not sufficient. Avid must explain what interests would be harmed if the information contained within the exhibit were disclosed to the public. It must also explain why those interests cannot be protected through selective redactions.

Avid's motion to seal (Dkt. No. 20) is DENIED. If Avid does not file a redacted version of its exhibit (Dkt. No. 22) **within fourteen days of this order**, the Clerk is DIRECTED to unseal Docket Number 22.

DATED this 11th day of May 2023.

John C. Coughenour
UNITED STATES DISTRICT JUDGE